UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURDE V. PUKANECZ,<br>　　　　Plaintiff,<br><br>　　v.<br><br>BARTA TRANSIT AUTHORITY and<br>EASTON COACH COMPANY,<br>　　　　Defendants | :<br>:<br>:<br>:　No. 5:20-cv-00561<br>:<br>:<br>:<br>: |

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 8 – Granted in Part**

**Joseph F. Leeson, Jr.**                                                                                                                                  **June 24, 2020**
**United States District Judge**

**I.    INTRODUCTION**

Plaintiff Courde V. Pukanecz, who suffers multiple physical and psychological afflictions that render him disabled, alleges that his rights under the Americans with Disabilities Act ("ADA") were violated when a BARTA-operated, Easton Coach paratransit van driver refused to stop and let Pukanecz off the van to urinate while transporting him to a doctor's appointment. This incident, which resulted in police intervention, allegedly exacerbated symptoms of his physical and mental afflictions, requiring inpatient rehabilitation.  Pukanecz seeks compensatory damages in his ADA claims, as well as in his state-law claim for Negligent Infliction of Emotional Distress ("NIED").  Defendants move to dismiss the Complaint for lack of subject matter jurisdiction because Pukanecz brought this action under a section of the ADA that only provides for injunctive relief and, also, for failure to state a claim.  For the reasons set forth below, the Motion to Dismiss is granted, the Complaint is dismissed without prejudice, and Pukanecz is granted leave to amend.

**II.     BACKGROUND**

Pukanecz is disabled for ADA purposes, as he suffers from medical and psychological afflictions including, but not limited to, Type 1 diabetes, multiple sclerosis, tardive dyskinesia, and bi-polar disorder. *See* Compl. ¶¶ 1, 8, ECF No. 1. On or about February 5, 2018, Pukanecz requested transportation from Defendant BARTA to receive medical treatment for his Type 1 Diabetes in West Reading, Berks County, Pennsylvania. *Id.* ¶ 7. At the time he made the reservation, Pukanecz informed BARTA of his medical issues. *Id.* ¶ 29. BARTA provided a paratransit van operated by Defendant Easton Coach. *Id.* ¶ 10. While riding the van, Pukanecz experienced an extreme urgency to urinate, which was a common occurrence for him that he previously disclosed to BARTA. *Id.* ¶ 12. Pukanecz packed a medical vessel and catheter anticipating a possible, uncontrollable need to urinate. *Id.* ¶ 13.

During transport, Pukanecz experienced urinary incontinence, visible to the driver on his pants, and requested the driver pull over so he could urinate into his medical vessel or self-catheterize. *Id.* ¶¶ 14, 15. The driver said company policy forbid her from pulling over, leading to an argument between the driver and Pukanecz. *Id.* ¶¶ 16, 17. Because of the argument, the driver contacted BARTA to report the situation and, in response, BARTA called 911 and requested police assistance. *Id.* ¶¶ 18, 19. When the police arrived, an officer confronted Pukanecz with his handgun drawn, causing Pukanecz to become nervous and anxious. *Id.* ¶ 20. The entire incident exacerbated symptoms of Pukanecz's medical and psychological afflictions, causing increased bodily pain, anxiety, embarrassment, and humiliation. *Id.* ¶ 22. Overall, the incident had such a negative effect on his health and well-being he had to undergo inpatient medical care and rehabilitation to address these problems. *Id.* ¶ 23.

Pukanecz filed the Complaint on January 31, 2020.  The Complaint alleges that Defendants violated Pukanecz's rights under "Title II" of the ADA; however, it cites to 42 U.S.C. § 12188(a), which is Title III of the ADA, as the basis for jurisdiction.  There are three counts: (1) a violation of Title II of the ADA against BARTA; (2) a violation of Title II of the ADA against Easton Coach; and (3) an NIED claim against Easton Coach.  In all three counts, Plaintiff seeks compensatory damages and attorneys' fees and costs.

Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) on four grounds: (1) lack of subject matter jurisdiction for the ADA claims; (2) failure to state a claim under the ADA; (3) lack of pendant jurisdiction for the NIED claim; and (4) failure to state an NIED claim. *See* Defs.' Mot. Dismiss 1, ECF No. 8.  The matter has been fully briefed.  *See* ECF Nos. 9 and 11.

### III.   STANDARDS OF REVIEW

#### A.   Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(1)

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact."  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)).  "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3).  A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not

support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise presents competing facts." *Aichele*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891) (alterations in original).

B. **Motion to Dismiss - Federal Rule of Civil Procedure 12(b)(6)**

In rendering a decision on a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to

state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**IV.    ANALYSIS**

    **A.    The Court does not have subject matter jurisdiction for the ADA claims under 42 U.S.C. § 12188(a).**

In the Complaint, Pukanecz states that federal jurisdiction is based on 42 U.S.C. § 12188(a) (Title III). Under this section of the ADA, only injunctive relief is available to individuals subjected to discrimination on the basis of disability. Because Pukanecz does not request injunctive relief and seeks only compensatory damages, the Court does not have subject matter jurisdiction over Pukanecz's ADA claims under 42 U.S.C. § 12188(a).

However, Pukanecz asserts that he mistakenly cited the wrong section of the ADA and that his error can be corrected. *See* Pl.'s Br. 5, ECF No. 9 ("Defendants seized upon the fact that Plaintiff mistakenly cited to Section 308(a) of the Americans with Disabilities Act, 42 U.S.C. 12188(a) as justification that the Court lacks subject matter jurisdiction over Plaintiff's claim against BARTA."). Accordingly, Pukanecz is given leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).

Assuming that the jurisdictional defect will be cured, the Court considers whether Pukanecz has stated an ADA claim against either Defendant.

    **B.    Pukanecz's ADA claim against BARTA fails to state a claim based on discriminatory treatment, but is sufficient based on failure to accommodate.**

In the Motion to Dismiss, BARTA argues the Complaint is devoid of facts that show Pukanecz was discriminated against by reason of his disability or that the discrimination was

5
062320

intentional.  In response, Pukanecz generally contends that he has stated a claim against BARTA in Count One under Title II of the ADA, 42 U.S.C. § 12132.  No party specifically addresses the different grounds for ADA liability, which is necessary to decide the Motion to Dismiss.

### 1. ADA liability may be based on discriminatory treatment.

Title II of the ADA states, "[i]t shall be considered discrimination . . . to fail to provide with respect to the operations of its fixed route system . . . transit and other special transportation services to individuals with disabilities." 42 U.S.C. § 12143 (1990). Special transportation services can include paratransit options that pick up and drop off individuals at their destination if they cannot use the regular transit system independently because of physical or mental impairment. *See* A Guide to Disability Rights Laws, ADA.gov (Feb. 2020), https://www.ada.gov/cguide.htm#anchor62335. If there are allegedly discriminatory problems within public transport or paratransit, Title II provides for a discrimination claim if the plaintiff shows three criteria:

(1) the plaintiff is a qualified individual with a disability;

(2) the plaintiff was excluded or denied benefits of some public entity's services, programs or activities, or otherwise discriminated against by the public entity; and

(3) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.

*See Dorsett v. SEPTA*, 2005 U.S. Dist. LEXIS 18351, *15 (E.D. Pa. Aug. 29, 2005).

Additionally, a plaintiff must show intentional discrimination to obtain compensatory damages for a Title II violation. *See Hall v. SEPTA*, 2016 U.S. Dist. LEXIS 161632 (E.D. Pa. Nov. 22, 2016); *McCree v. SEPTA*, 2009 U.S. Dist. LEXIS 4803 (E.D. Pa. Jan. 22, 2009); *Dorsett*, 2005 U.S. Dist. LEXIS 18351.  Factors suggesting discrimination is not intentional

include, but are not limited to, the transit system investigating a reported incident, providing training to drivers in response to the complaints, not having repeat incidents with the same drivers, and driver willingness to assist passengers. *See Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *16-17. Isolated and temporary problems causing imperfect service for individuals with disabilities are generally not deemed intentionally discriminatory. *Id.* at *15; *Hall*, 2016 U.S. Dist. LEXIS 161632, at *13; *McCree*, 2009 Dist. LEXIS 4803, at *39-40.

The Eastern District of Pennsylvania has addressed the question of intentional discrimination under the ADA with respect to public transportation in several cases, including *Dorsett*, *Hall*, and *McCree*. *See Hall*, 2016 U.S. Dist. LEXIS 161632 *13; *McCree*, 2009 Dist. LEXIS 4803, at *39-40; *Dorsett*, 2005 U.S. Dist. LEXIS 18351, *15. In all three cases, the courts held that despite the plaintiffs facing potentially discriminatory situations, the incidents were not intentional, and thus no damages were available. *See Hall*, 2016 U.S. Dist. LEXIS 161632, at *13; *McCree*, 2009 Dist. LEXIS 4803, at *39-40; *Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *15. In *Dorsett*, the plaintiff had problems accessing the wheelchair lift on SEPTA buses in twelve out of 760 rides. *See Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *9. In *Hall*, the plaintiff claimed the driver did not stop a drunk man from blocking the handicapped seats. *See Hall*, 2016 U.S. Dist. LEXIS 161632, at *13. In *McCree*, the plaintiff fell off a wheelchair ramp while the driver attempted to give the plaintiff instructions to avoid a "bump" in the ramp. *See McCree*, 2009 Dist. LEXIS 4803, at *39-40. Despite the complications experienced by individuals with disabilities in each case, the courts in *McCree* and *Dorsett* reasoned SEPTA's active response to complaints, lack of repeat incidents with the same drivers, and reminders to drivers of how to assist handicapped passengers constituted sufficient evidence that discrimination, if any, was not intentional. *See McCree*, 2009 Dist. LEXIS 4803, at *39-41;

*Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *16. The court in *Hall* dismissed the ADA claims for failure to state a cognizable claim for relief because the plaintiff did not allege sufficient facts of Title II discrimination and did not show the defendant intentionally discriminated based on alleged disability. *See Hall*, 2016 U.S. Dist. LEXIS 161632, at *13-14.

In the situation at hand, Pukanecz, who suffers from multiple medical and psychological disabilities, requested the Easton Coach driver let him off the paratransit van so he could urinate into a special medical vessel or self-catheterize, but she refused because stopping was against company policy. There are no allegations that the driver applied this policy discriminately by reason of Pukanecz's disability. *See McCree*, 2009 U.S. Dist. LEXIS 4803 (finding there was no evidence that the bus driver, who did not offer the plaintiff any physical assistance when the plaintiff could not maneuver her motorized scooter on the wheelchair ramp to board the bus, acted by reason of the plaintiff's disability or intentionally discriminated against the plaintiff).

Moreover, there are no allegations to show intentional discrimination. *See id.* The driver's decision to follow company policy and not stop the van, instead calling BARTA, which in turn contacted the police, resembles the drivers' behavior alleged in the three cases against SEPTA. *See Hall*, 2016 U.S. Dist. LEXIS 161632, at *2; *McCree*, 2009 Dist. LEXIS 4803, at *2; *Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *9. In these cases, driver conduct, even if inadequate or misguided, along with the lack of a repeat incident from the same driver, showed the discrimination, if any, was not intentional. *See Hall*, 2016 U.S. Dist. LEXIS 161632, at *13; *McCree*, 2009 Dist. LEXIS 4803, at *40-41; *Dorsett*, 2005 U.S. Dist. LEXIS 18351, at *16-17. In the case at bar, the Easton Coach driver was following company policy when she did not stop the paratransit van, and Pukanecz did not plead any facts suggesting this was a repeat incident or that he filed a previous, unaddressed concern. Thus, Pukanecz has failed to allege sufficient

facts to show intentional discrimination by BARTA to state a claim for compensatory damages. *See also Kaitlin C. v. Cheltenham Twp. Sch. Dist.*, No. 07-2930, 2010 U.S. Dist. LEXIS 20699, at *22-23 (E.D. Pa. Mar. 5, 2010) (dismissing claims seeking compensatory damages because the plaintiff's complaint was "devoid of allegations regarding intent of any sort").

Count One, to the extent it is based on discriminatory treatment, is dismissed without prejudice, and with leave to amend, for failure to state a claim. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

### 2. ADA liability may be based on failure to accommodate.

A plaintiff can "assert a failure to accommodate as an independent basis for liability under the ADA." *Muhammad v. Court of Common Pleas*, 483 F. App'x 759, 763 (3d Cir. 2012). "A failure-to-accommodate claim differs from other ADA claims in that the ADA does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination." *Id.*; *See also Jones v. Pa. Minority Bus. Dev. Auth.*, No. 97-4486, 1999 U.S. Dist. LEXIS 10413, at *19 (E.D. Pa. July 9, 1999) (holding that this theory of liability "does not require that an individual must be accommodated because he happens to have a disability"). Rather, the plaintiff must show causation: "that, but for the failure to accommodate, he would not be deprived of the benefit he seeks." *See Muhammad*, 483 F. App'x at 764.

Nevertheless, a plaintiff must show intentional discrimination to obtain compensatory damages. *See K. K. v. Pittsburgh Pub. Sch.*, 590 F. App'x 148, 153 (3d Cir. 2014). A jury may infer intentional discrimination from a defendant's "deliberate indifference." *See id.* A plaintiff must demonstrate:

      (1)    the defendant's knowledge that a federally protected right is substantially likely to be violated; and

      (2)    the defendant failed to act despite that knowledge.

*See id.* "[D]eliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (internal quotations omitted). Under the first requirement, a public entity is on notice that an accommodation is required when either the plaintiff has alerted the public entity to his need for accommodation or the need for accommodation is obvious. *See Young v. Sunbury Police Dep't*, 160 F. Supp. 3d 802, 810-11 (M.D. Pa. 2016). Under the second requirement, a plaintiff must show that the defendant deliberately failed to satisfy its duty to act in response to the accommodation request. *See S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 719 (W.D. Pa. 2015). The defendant has a duty to undertake a fact-specific investigation by gathering information from the plaintiff and, if necessary, qualified experts, to determine the proper accommodation required, giving primary consideration to the plaintiff's preference. *See id.*

In the instant action, Pukanecz informed BARTA that his medical conditions commonly gave him an extreme urgency to urinate. Despite this notification, BARTA failed to assign a driver qualified to handle his special needs, which Pukanecz contends was necessary to accommodate his disability. At this early stage of the proceedings and accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in his favor, Pukanecz has stated a claim for compensatory damages against BARTA under Title II. Thus, to the extent Count One is based on failure to accommodate, the Motion to Dismiss is denied.

### C. Pukanecz fails to state an ADA claim against Easton Coach.

As pled, Count Two of the Complaint asserts an ADA claim against Easton Coach under Title II of the ADA. However, Title II of the ADA protects individuals with disabilities from discrimination by the state or local government. *See* 42 U.S.C. § 12132 (West 1990). Because Easton Coach is a private entity, there is no relief available under Title II.

In Pukanecz's brief opposing the Motion to Dismiss, Pukanecz asserts that he can easily amend this Count by alleging Title III violations against Easton Coach. *See* Pl.'s Br. 2 (citing 42 U.S.C. § 12184 (West 1990) (prohibiting discrimination on the basis of disability by public transportation services provided by a private entity)). He further contends that the current allegations support an ADA claim against Easton Coach under Title III. As previously explained, however, only injunctive relief is available under Title III. Pukanecz's allegations therefore do not state a claim for compensatory damages against Easton Coach.

Count Two against Easton Coach is dismissed without prejudice and with leave to amend. *See Alston*, 363 F.3d at 235 (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

### D. Because Pukanecz can likely amend the complaint to establish subject matter jurisdiction over the ADA claims, a decision as to whether to exercise supplemental jurisdiction over Pukanecz's NIED claim is deferred.

For the reasons previously stated, although Pukanecz cites to the wrong ADA section in the Complaint to establish subject matter jurisdiction for the federal claims, he can likely amend to correct this jurisdictional defect. Thus, the Court need not address at this time whether to exercise supplemental jurisdiction over the state law claim. Expecting that the jurisdictional concerns will be resolved by amendment, the Court now considers the merits of the NIED claim.

### E. Pukanecz's fails to state a claim for NIED against Easton Coach.

In Pennsylvania, NIED does not require a physical impact if the defendant has a contractual or fiduciary relationship with the plaintiff. *See Toney v. Chester County Hospital*, 36 A.3d 83, 84 (Pa. 2011). NIED does not apply in "garden-variety" breaches, instead only applying if there is a special relationship of which a breach would result in extreme emotional harm that "a reasonable person should not be expected to endure the resulting distress." *Id.* at 84-85. Special relationship NIED claims apply only to preexisting relationships. *Id*. Although there is not an exhaustive list of NIED-eligible special relationships, relationships involving life and death often fall within this category. *Id.* at 95. This can include relationships with doctors and patients, and relationships between loved ones of deceased and those responsible for caring for the corpse. *Id.* at 92. For example, in *Toney*, the court held a doctor-patient relationship constitutes a special relationship that when breached could yield NIED claims. *Id*. at 95. The doctor negligently misread and misinterpreted an ultrasound to opine a baby was healthy, causing the mother to suffer emotional distress because she did not have the chance to get psychiatric, religious, or social counseling prior to her child's birth with abnormalities. *Id.* at 85. The court reasoned this was a special relationship, and despite no physical injury, warranted NIED liability because there was an implied duty to care for the plaintiff's well-being. *Id.* at 95.

In the case at bar, Pukanecz contends 49 C.F.R. § 37.173 imposed a duty upon Easton Coach to properly train its personnel to ensure that a disabled individual is treated in a "respectful and courteous way." *See* Compl. ¶ 38; 49 C.F.R. § 37.173 (1991). The Code of Federal Regulations addresses the role of a bus driver in transporting individuals with disabilities in 49 C.F.R. § 37.173 requiring, "Each public or private entity which operates a fixed route or demand responsive system shall ensure that personnel are trained to proficiency . . . and properly

assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." 49 C.F.R. § 37.173 (1991). Pukanecz alleges the Easton Coach driver breached this duty by disrespecting him and creating a situation that led to extreme emotional distress. *See* Compl. ¶ 39.

Despite pleading that there is a duty between paratransit driver and passenger and citing the C.F.R. section that outlines the training requirements for paratransit drivers, Pukanecz does not show that this training requirement for drivers establishes a duty at all, especially that the driver-passenger relationship is a special relationship. *See* Compl. ¶ 38. Pukanecz does not sufficiently allege the relationship between a paratransit van driver and passenger reaches the level of, "obviously and objectively hold[ing] the potential of deep emotional harm" or "an implied duty to care for the plaintiff's emotional well-being." *Toney*, 36 A.3d at 95. Based on this failure to provide specific factual allegations of a duty and because conclusory allegations need not be accepted as true, Pukanecz's NIED claim is dismissed, without prejudice, and he is granted leave to amend. *See Alston*, 363 F.3d at 235 (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

V.     **CONCLUSION**

The Complaint cites the wrong section of the ADA to establish subject matter jurisdiction, but the jurisdictional defect can likely be corrected by amendment.  Most of Pukanecz's claims under the ADA also cite to the wrong title or include insufficient allegations to state a claim, but he is given leave to amend to cure these deficiencies.  Finally, Pukanecz is given leave to amend his NIED claim, which currently fails to show that there is a special relationship to impose  duty of care.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge